UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MAXINE JONES                                                                      PLAINTIFF

v.                                       CIVIL ACTION NO. 3:16CV-P127-JHM

DR. HILAND *et al*.                                             DEFENDANTS

### MEMORANDUM OPINION

Plaintiff Maxine Jones, a prisoner proceeding *in forma pauperis*, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will dismiss this action.

### I. SUMMARY OF CLAIMS

Plaintiff is presently incarcerated at the Kentucky Correctional Institution for Women. She names four Defendants in this action. She identifies the Defendants as follows: (1) Dr. Hiland, a physician at Western Kentucky Correctional Complex (WKCC); (2) Correct Care Solutions (CCS), a medical supplier at WKCC; (3) Terri Krone, the head of nursing at WKCC; and (4) "Contract Nurses" employed by CCS and working at WKCC. Plaintiff sues all Defendants in their official capacities. She also sues Defendant Hiland in her[1] individual capacity.

Plaintiff states that she "began to seriously complain of pains, shortness of breath and more in 2009. Their first solution was to issue a medical memo with elevated sleep with an extra pillow for a year . . . starting 2-20-09." According to Plaintiff she again sought medical

---

[1] Plaintiff identifies this Defendant as Chanin Hiland in the summons submitted with the complaint and in the body of the complaint.

treatment for shortness of breath on August 23, 2010. She paid "another $3 fee" apparently for the medical appointment, and she states that she received "no help." Plaintiff states that in April 2012, she went to sick call to renew her inhaler which had been "issued for breathing problems." Plaintiff states that she was charged on April 27, 2012, for this sick call appointment. Plaintiff requested a medical appointment on November 11, 2012, at which time she was complaining of "chronic congestion, a choking cough, a raw throat and body aches." On the form she wrote, "<u>PLEASE</u> <u>HELP</u>!" Plaintiff states that she was "literally begging for help." It is unclear what treatment Plaintiff received at that time, but the exhibits attached to the complaint do reflect that a cold pack was ordered for Plaintiff. Plaintiff put in another request to be seen by medical on August 25, 2013. At that time, she wrote on the request form that she had "been coughing up blood and sometimes it's hard to talk." According to Plaintiff, on August 27, 2013, she "had yet another doctor apt. and continually [she] was told laryngitis, bronchitis, allergies as a diagnosis." Plaintiff states that she had a "follow up apt." on December 14, 2013. This was "an annual." On January 26, 2014, Plaintiff was given "a med line note to 'wait in pill call line due to breathing difficulty.'" The note to which Plaintiff refers further states that Plaintiff was "to receive medication as soon as she gets in line." On February 6, 2014, Plaintiff "was charged yet another $3 for an emergency sick call. An officer ran [her] to medical because [she] filled the bottom of a trash bag with coughing up blood." According to Plaintiff, "[a]gain nothing was done." To the complaint, Plaintiff attached copies of her medical visits that were provided to her. She states that these "were all [she] received yet the official record should show many more trips to medical."

     Plaintiff states that she was finally rushed to the emergency room in late February or early March 2014, at which time she "was immediately diagnosed with cancer!" Plaintiff says

she has "stage 4 squamous cell carcinoma [in her] body." Plaintiff states that she had "emergency surgery shortly after and they removed a large tumor and [her] entire vocal chords." Plaintiff states that she underwent chemotherapy and radiation. She says that "[t]hey removed treatments, installed a feeding tube for a long period of time," and says that she was told she "would probably not eat again." Plaintiff also says that she had a port placed for medications. According to Plaintiff, she had a tracheostomy and will have to "breathe through it permanently now." Plaintiff states as follows: "lost my ability to speak, can barely eat solid food, need daily care of trachea apparatus, need wheelchair for long trips, etc. Damage accumulated in my body due to their negligence. I endured many struggles and have permanent health problems resulting from lack of basic health care."

Plaintiff contends that Defendants are responsible "for [her] current condition." She says that Defendant Hiland and Defendant Krone "never sent me out yet even with severe bleeding, most of the time never felt [her] throat, or even touched [her]." She alleges violations of the Eighth and Ninth Amendments "along with section 17 of Ky Const. Right contained by the people surely include adequate medical care much less to be treated so cruelly and ignored medically." As relief for the alleged wrongs, Plaintiff seeks monetary damages, punitive damages, and "medical parole."

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is

legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 90 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the district court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

### A. Official-Capacity Claims

Plaintiff sues all Defendants in their official capacities. It is not entirely clear from Plaintiff's complaint whether Defendants are employees of WKCC or employees of Correct Care Solutions. Either way, the official-capacity claims for monetary damages fail.

If the individual Defendants are employees of WKCC, the official-capacity claims against them are barred by Eleventh Amendment immunity. Under the Eleventh Amendment to the U.S. Constitution,[2] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("This [Eleventh Amendment] withdrawal of jurisdiction effectively confers an immunity from suit. Thus, 'this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'") (quoting *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see also Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

---

[2] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment similarly bars damages claims against state officials sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't of Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity). Thus, to the extent Defendants are employees of WKCC, the official-capacity claims against them for monetary damages is barred by Eleventh Amendment immunity.

If the individual Defendants are employees of Correct Care Solutions, the official-capacity claims against them are also barred. A private corporation that performs a public function, such as contracting with the state to run its prisons, may be found to act under color of law for purposes of § 1983. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991). The same principle applies to a private company that contracts to provide medical care to prisoners. *See, e.g.*, *Thomas v. Coble*, 55 F. App'x 748 (6th Cir. 2003). Nevertheless, "respondeat superior alone cannot create liability under § 1983." *Id.* at 748-49. For a suit to lie against a private corporation, it must act "pursuant to a policy or custom." *Id.* at 749. "[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (citations omitted).

Plaintiff has not alleged or identified a policy or custom of Correct Care Solutions that resulted in the alleged violation of a constitutional right, but rather seeks to hold the company

liable for the actions of its employees. Accordingly, Plaintiff's complaint fails to state a claim against Defendant Correct Care Solutions or its employees in their official capacities.

### B. Eighth Amendment Claim

The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from deliberate indifference to an inmate's serious medical needs since such indifference constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. In order for a claim to rise to the level of an Eighth Amendment violation, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Therefore, to prove a prison official is liable under the Eighth Amendment for denial of medical treatment, the prisoner must first demonstrate the objective component of an Eighth Amendment deliberate-indifference claim which requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). Although the Court has no way of knowing when Plaintiff's cancer began, for the purposes of initial review, the Court will presume that Plaintiff has stated facts concerning her medical needs which satisfy the objective component.

The prisoner must also demonstrate that the prison official subjectively possessed "a 'sufficiently culpable state of mind'" in denying medical care. *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The subjective component of an

Eighth Amendment claim requires that the official's conduct be deliberately indifferent to Plaintiff's needs. *Id.* at 837-47; *Wilson v. Seiter*, 501 U.S. at 297. Deliberate indifference is a "state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. at 835. "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the [doctor or] official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. at 837). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Id.* (citing *Estelle v. Gamble*, 429 U.S. at 106; *Farmer v. Brennan*, 511 U.S. at 835).

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. at 105. "Neither negligent medical care nor delay in medical care constitutes a violation of the Eighth Amendment unless there has been deliberate indifference, which results in substantial harm." *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) ("Accidents, mistakes, negligence and medical malpractice are not constitutional violations merely because the victim is a prisoner.") A court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). A difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate-indifference claim. *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). "[T]he question whether an x-ray-or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for

8

medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Estelle v. Gamble*, 429 U.S. at 107.

Based on Plaintiff's own assertions in the complaint, Plaintiff received medical treatment for her complaints. She states that she was seen on numerous occasions by the doctor and medical staff concerning her complaints. According to Plaintiff, "continually [she] was told laryngitis, bronchitis, allergies as a diagnosis." Her complaint is not that she was not seen by medical, but that they did not diagnose and treat her cancer. Negligence, even gross negligence, will not support a § 1983 claim for denial of medical care. *See Farmer v. Brennan*, 511 U.S. at 837; *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). "Deliberate indifference to serious medical needs" is distinguishable from an inadvertent failure to provide adequate medical care. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. " *Estelle v. Gamble*, 429 U.S. at 106; *see also Gibson v. Matthews*, 926 F.2d 532, 536-37 (6th Cir. 1991) (negligence of medical personnel does not state a claim under § 1983 for deliberate indifference to medical needs); *Westlake v. Lucas*, 537 F.2d 856, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

Having failed to state an Eighth Amendment claim, this claim will be dismissed.

### C. Ninth Amendment Claim

The Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d at 537. Consequently, the Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claims." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986). Therefore, Plaintiff's § 1983 claim based on the Ninth Amendment fails to state a claim.

### D. Statute of Limitations

Plaintiff brings this action under 42 U.S.C. § 1983 which provides the exclusive remedy for constitutional claims brought against state and local officials and local units of government. *Thomas v. Shipka*, 818 F.2d 496, 499-504 (6th Cir. 1987), *vacated on other grounds*, 488 U.S. 1036 (1989). Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute [of limitations] for personal injury actions"); *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."). Thus, in Kentucky, § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. Ann. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).

"Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run." *Sevier v.*

*Turner*, 742 F.2d 262, 272 (6th Cir. 1984); *see also Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001) ("The question of when the statute of limitations begins to run, however, is determined by federal law."). "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action," and "[a] plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier v. Turner*, 742 F.2d at 273.

Though the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint. *Fields v. Campbell*, 39 F. App'x 221, 223 (6th Cir. 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)); *see also Alston v. Tenn. Dep't of Corr.*, 28 F. App'x 475, 476 (6th Cir. 2002) ("Because the statute of limitations defect was obvious from the face of the complaint, sua sponte dismissal of the complaint was appropriate."); *Fraley v. Ohio Gallia Cty.*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir. Oct. 30, 1998) (" [A] sua sponte dismissal of an in forma pauperis complaint is appropriate where the complaint bears an affirmative defense such as the statute of limitations and is therefore frivolous on its face.").

All the events about which Plaintiff complains occurred between 2009 and 2014. Plaintiff states that she was diagnosed with cancer in late February or early March of 2014. Without deciding the date the statute of limitations began to run, it is clear that the last date that the statute of limitations began to run in this case would have been sometime in March 2014, when Plaintiff learned that she had cancer. Plaintiff filed the present action on or about February 23, 2016, when she placed the complaint in the prison system for mailing, well outside the one-year statute of limitations.[3] There is no indication from the complaint about any time period in

---

[3] Under the mailbox rule, a prisoner's action is deemed filed on the date it was presented to prison officials for mailing. *Miller v. Collins*, 305 F.3d 491, 497-98 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)); *see*

11

which the statute of limitations may have been tolled. Thus, this action is barred by the statute of limitations. *See Fraley v. Ohio Gallia Cty.*, 1998 WL 789385 (finding that the district court correctly *sua sponte* dismissed the action under 28 U.S.C. § 1915(e)(2) as frivolous since it was obvious from the complaint that it was barred by the statute of limitations).

### E.  State-Law Claim

To the extent Plaintiff is attempting to bring a state-law claim, the Court declines to exercise supplemental jurisdiction over such a claim.  Under 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3). Because the Court will dismiss the federal claims over which it has original jurisdiction, it will decline to exercise supplemental jurisdiction over the state-law claim and dismiss it without prejudice.  *See Runkle v. Fleming*, 435 F. App'x 483, 486 (6th Cir. 2011) ("[W]hen, as here, 'all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'") (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)).

### IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss this action by separate Order.

Date: June 30, 2016

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants
4414.003

---

*also Bowlds v. Dortch*, No. 4:10-CV-P61-M, 2010 WL 2203258 (W.D. Ky. May 26, 2010) (applying the mailbox rule to a civil rights action brought pursuant to 42 U.S.C. § 1983).